UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

FAYDEE BENJAMIN

                        Plaintiff,

     -against-

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY

                        Defendant.

----------------------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM OF DECISION AND ORDER**

16-CV-1730 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Faydee Benjamin, proceeding pro se, appeals the decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental social security income ("SSI"). Defendant has moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, requesting that this Court affirm the Commissioner's determination that Plaintiff was not disabled.[1]

## BACKGROUND[2]

### I. Procedural History

Plaintiff filed an application for SSI benefits on April 30, 2012, alleging a disability onset date of October 30, 2011. (*See* Tr. 223-28, 265, 273.)[3] Specifically, Plaintiff alleged that she was disabled due to pain from arthritis of her back, hips, and knees. (Tr. 265.) By order dated September 20, 2012, Plaintiff's claims were denied. (Tr. 125-28.) Plaintiff subsequently

---

[1] Plaintiff did not file an opposition to Defendant's motion.
[2] The Court assumes the parties' familiarity with the record for purposes of this appeal.
[3] Citations to "Tr." refer to the certified copy of the administrative record of proceedings filed by the Commissioner.

1

requested an administrative hearing, which was held on April 10, 2014. (Tr. 112-20.) The hearing was adjourned, however, to allow Plaintiff to find an attorney. (Tr. 119-20.) On September 4, 2014, a second hearing was held before Administrative Law Judge ("ALJ") Joani Sedaca. (*See* Tr. 37-86.) At that hearing, the ALJ heard argument concerning Plaintiff's alleged physical impairments and a mental impairment, which was raised for the first time upon the denial of Plaintiff's initial claim. (*See id.*) The ALJ denied Plaintiff's claims on September 22, 2014, upon finding Plaintiff was not disabled. (*See* Tr. 20-31.)

## II. Decision by the ALJ

In finding that Plaintiff was not disabled, the ALJ followed the sequential five-step process that governs claims of disability for purposes of obtaining SSI. *See* 20 C.F.R. § 416.920(a)-(h). *First*, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2012, the application date. (Tr. 22.) *Second*, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee and bilateral hips, and obesity. (*Id.*) The ALJ also determined that Plaintiff had the following non-severe impairments: a cardiac impairment and dysthymic disorder. (*Id.*) With regard to the non-severe impairments, the ALJ found that while Plaintiff had a mild mitral and tricuspid valve regurgitation, she did not complain of any cardiac impairment during the hearing and there was very little in the record showing that the cardiac impairment caused significant limitations because most of her treating source evidence concerned her orthopedic impairments. (Tr. 23.) As for the dysthymic disorder, the ALJ found that it did not cause more than minimal limitations in the Plaintiff's ability to perform basic mental work activities. (*Id.*) Specifically, the ALJ determined that Plaintiff did not meet the functional limitations set forth in "paragraph B" of listing 12.06 because she had: a mild

2

restriction with respect to activities of daily living; a mild restriction with respect to social functioning; mild restrictions with respect to concentration, persistence, or pace; and no evidence of any episodes of decompensation of extended duration. (Tr. 23-24.) *Third*, the ALJ found that Plaintiff's physical impairments did not meet or equal the severity of the impairments in the listings. (Tr. 24.) *Fourth*, the ALJ determined that, in light of Plaintiff's impairments, she had a residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 416.967(a), with the following exertional requirements: she can only occasionally climb, stoop, crouch, and kneel, but can never crawl, and can only occasionally push and/or pull with both legs. (*Id.*) *Fifth*, the ALJ determined that Plaintiff could perform the following jobs: bench hand, addresser, and order clerk. (Tr. 30.)

Plaintiff filed a request for review with the Appeals Council, which was denied on January 27, 2016, rendering the ALJ's decision final. (*See* Tr. 1-7.)

## STANDARD OF REVIEW

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). Even where a motion for judgment on the pleadings is unopposed, the court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law. *See Martell v. Astrue*, No. 09 Civ. 1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (recognizing the court's obligation to review entire record in deciding unopposed motion for judgment on the pleadings in social security benefits case); *see also McDowell v. Comm'r of Soc. Sec.*, No. 08-CV-1783, 2010 WL 5026745, at *1 (E.D.N.Y. Dec. 3, 2010) ("Although the

3

non-movant's failure to respond 'may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law.'" (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004))). Further, when a plaintiff proceeds pro se, the court will read her submissions liberally and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993)).

Under the Social Security Act, a disability claimant may seek judicial review of the Commissioner's decision to deny his or her application for benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012). In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based on correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

The substantial evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . . ."). Instead, the Commissioner's decision need only be supported by substantial evidence, which is "more than a mere scintilla" of evidence and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In deciding whether the Commissioner's findings meet this standard, the court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination. *See Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999). Still, the court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). This is so, even if substantial evidence could support a contrary conclusion or where the Court's independent analysis might differ from the Commissioner's. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (S.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984).

As noted above, the Social Security Act establishes a sequential five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920(a)-(h). At the first step, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. *See id.* § 416.920(b). If not, the Commissioner must proceed to the second step to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *See id.* § 416.920(c). An impairment is severe if it significantly limits a claimant's abilities to perform "basic work activities." *See id.* § 416.920(c). If the claimant has a medically determinable severe impairment, the Commissioner will proceed to step three to determine whether any identified severe impairments

meet or medically equal those identified in Appendix 1 to the Act. *See id.* § 416.920(d)-(e). Such impairments are per se disabling if a claimant meets the duration requirements. *See id.*

When evaluating the severity of mental impairments, the Code of Federal Regulations for Social Security (the "Regulations") requires the ALJ to apply an additional "special technique" at the second and third steps of the review. *See* 20 C.F.R. § 416.920a(a); *Kohler v. Astrue*, 546 F. 3d 260, 265-66 (2d Cir. 2008).[4] *First*, the ALJ must determine whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 416.920a(b)(1). *Second*, if such a mental impairment is found, the ALJ must rate the degree of the claimant's functional limitations in light of the impairment(s) in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of deterioration or decompensation at work or in work-like settings. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ must make "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 416.920a(e)(4). If a claimant's mental impairment is severe, the ALJ will determine whether the impairment is per se disabling because it meets or medically equals the severity of a listed mental disorder. *See id.* § 416.920a(d)(2).

To be per se disabling, a mental impairment must result in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; and/or marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpt. P, App. 1. If the requisite findings are established, the claimant will be found to be disabled. 20 C.F.R. § 416.920a(c). If not, the ALJ will proceed to the next step.

---

[4] On January 17, 2017, following the date of the ALJ's decision, new regulations came into effect changing the test applied to assess whether a mental impairment is disabling. *See* 20 C.F.R. § 416.920a (effective Jan. 17, 2017). The Court applies the regulations in effect at the time of the ALJ's decision. *See* Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

6

For physical or mental impairments, if a claimant's impairments are not per se disabling, the ALJ must assess the claimant's ability to work in light of her limitations, otherwise known as her RFC. *See id.* §§ 416.920(a)(4)(iv), 416.920a(d)(3), 416.945(a)(1). Once the claimant's RFC is decided, the Commissioner must undertake to establish whether the claimant's RFC will allow her to perform past relevant work. *See id.* § 416.920(f). If the claimant's RFC precludes her from performing past relevant work, the Commissioner bears the burden of proving that, given her RFC, age, education, and work experience, the claimant can do other work that exists in significant numbers in the national economy. *See id.* § 416.912(f). If such work exists, the claimant is not disabled. *See id.*

## DISCUSSION

### I. The ALJ's Determinations as to Plaintiff's Physical Impairments

#### A. The ALJ's Determination as to the Severity of Plaintiff's Physical Impairments Was Supported by Substantial Evidence

The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee and bilateral hips; and obesity. (Tr. 22.) Given that the ALJ's findings are consistent with Plaintiff's application for benefits, the Court assumes that Plaintiff does not take issue with these findings. However, in reviewing a final decision of the Commissioner, the Court must independently examine the entire record and determine whether the Commissioner's findings are supported by substantial evidence. *See Snell*, 171 F.3d at 132.

With respect to Plaintiff's degenerative disc disease of the lumbar spine, a March 30, 2011 x-ray showed: "[m]ultilevel discogenic degenerative change"; "[f]acet joint arthrosis on the right at L5-S1"; and "[b]ony osteophyte encroaches posteriorly from the lower endplate L5." (Tr. 330, 543.) A September 2, 2011 MRI showed "[a]cute small left paracentral disc protrusion

at L4-L5" and "[c]hronic broad-based disc protrusion and facet hypertrophy at L5-S1 causing moderate to severe narrowing of the left foramina," which the report indicates should have been correlated for signs of radiculopathy. (Tr. 331, 478, 524, 529). Additionally, a May 5, 2012 x-ray revealed a "needle in the lumbar sacral region with the tip projecting over L3-L4, L4-L5, L5-S1 facet joint." (Tr. 474.) A March 31, 2014 x-ray also showed degenerative joint disease at L5-S1, (*see* Tr. 525), and an August 8, 2014 MRI revealed mild facet enlargement at L4-L5 and L5-S1, broad disc bulging with midline annular tear causing bilateral foraminal narrowing at L4-L5, and disc degeneration with broad disc bulging at L5-S1 with mild bilateral neural foraminal narrowing. (*See* Tr. 721.) In addition to this objective evidence, Plaintiff testified that she has pain in her back, had injections in her back in 2012, and takes Motrin for pain relief. (*See* Tr. 56, 69.) Plaintiff also informed a consultative medical examiner, Dr. Vinod Thukral, that she had lower back pain after receiving an epidural injection while giving birth in 2008. (*See* Tr. 358.) Moreover, the record reveals that Plaintiff underwent physical therapy for her back from October 2012 to August 2014. (*See* Tr. 593-617.) Accordingly, substantial evidence in the record supports the ALJ's finding that Plaintiff's degenerative disc disease of the lumbar spine is severe.

The record similarly supports a finding that Plaintiff's degenerative joint disease of the right knee and bilateral hips is severe. A February 28, 2012 x-ray revealed that Plaintiff had degenerative changes in the hips, with changes in the left hip being greater than the right hip. (*See* Tr. 477, 528, 540.) On March 27, 2012, an x-ray of Plaintiff's right knee showed slight varus angulation of the knee, widening of the medial patellofemoral joint space, and a small bony spur involving the undersurface of the patella and at the insertion of the quadriceps tendon. (*See* Tr. 481, 532-33.) A February 14, 2013 x-ray showed Plaintiff had degenerative changes in

8

both the right and left hip, narrowed joint space and reactive sclerosis and cystic changes in the right and left acetabulum, and osteophytes in the left femoral head. (*See* Tr. 410.) Bilateral hip x-rays from March 31, 2014 also showed findings compatible with osteoarthritis, most severe on the left. (*See* Tr. 522.) Additionally, Plaintiff complained of hip and knee pain during her visits with Dr. Geoffrey Phillips. (*See* Tr. 630-37.) Based on the record, the ALJ's findings were supported by substantial evidence.

Finally, the ALJ considered Plaintiff's obesity.[5] The ALJ explicitly found that Plaintiff's obesity was a severe impairment based on a September 5, 2012 internal medicine consultative examination. (*See* Tr. 22-23.) That exam indicated that Plaintiff was obese, as she was six feet tall and 258 pounds. (*See* Tr. 359.) The ALJ determined that based on this height and weight, Plaintiff had a body mass index ("BMI") of 35 and "as per [Social Security Ruling] 02-1, a BMI of 30 or greater is indicative of obesity, and can compound the effects of, for example, orthopedic impairments." (Tr. 23.) Accordingly, the ALJ's determination that Plaintiff's obesity was a severe impairment is also supported by the record.

Unlike the above physical impairments, the ALJ found that Plaintiff's cardiac impairment was non-severe. (*See* Tr. 22-23.) This conclusion, too, is supported by the record. The record demonstrates that Plaintiff underwent an echocardiogram on November 9, 2011, which showed a mild mitral and tricuspid valve regurgitation. (*See* Tr. 328-29.) Another echocardiogram on January 12, 2012 showed sinus bradycardia. (*See* Tr. 332.) Despite these findings, notes from May 2012 revealed a normal echocardiogram, with normal rate, regular rhythm, and no murmur.

---

[5] Although obesity is no longer considered to be per se disabling under the Regulations, *see* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122, 46122 (Aug. 24, 1999) (explaining that "obesity" was removed from the listing of impairments), the ALJ should nevertheless address, as she did here, whether a claimant's obesity can be considered a severe impairment. *See* Social Security Ruling 02-1p, 67 Fed. Reg. 57,859, 57,861-62 (Sept. 12, 2002) ("[W]e will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work.").

(*See* Tr. 459-60.) While Plaintiff complained of chest pain during this May 2012 doctor's visit, the notes explained that the chest pain was likely musculoskeletal or related to gastroesophageal reflux disease, and was not cardiac in nature. (*See* Tr. 460.) Thus, the ALJ's finding regarding this impairment is supported by the record.

### B. The ALJ's Determination as to Whether Plaintiff's Severe Impairments Met or Equaled Any Listed Impairment Is Supported by Substantial Evidence

The ALJ's determination that Plaintiff's severe physical impairments did not meet or equal any listed impairment is supported by the record. Specifically, the ALJ found that Plaintiff's orthopedic impairments did not meet listing 1.02A, major dysfunction of joint, because Plaintiff did "not exhibit[ ] an inability to ambulate effectively."[6] (*See* Tr. 24.) The ALJ further noted that, although Plaintiff currently used a cane, during a September 2012 exam, Dr. Thukral found she had a normal gait without it. (*See id.*) Dr. Thukral, therefore, opined that Plaintiff did not need the cane. (*See* Tr. 359.) Furthermore, there was no evidence that a doctor prescribed a cane to Plaintiff; rather, Plaintiff reported that she bought a cane for herself. (*See* Tr. 359.)

The ALJ also found that Plaintiff's lumbar spine impairment did not meet listing 1.04A, disorders of the spine, because Plaintiff did not exhibit the necessary neurological deficits in her lower extremities. (*See* Tr. 24, 591.) Notably, Dr. Emmanuel Valery found in April 2014 and July 2014 that Plaintiff had normal strength, no tenderness, no swelling or deformity, a normal neurological exam, but limited range of motion in both hips and the lower back due to pain. (*See*

---

[6] Section 1.00B2b defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; *i.e.*, an impairment that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities." *See* 20 C.F.R. Pt. 404, Subpt. P, Section 1.00B2(b)(1). Examples of an inability to ambulate effectively include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *See id* at 1.00B2(b)(2).

Tr. 580-81, 590-91.) As for Plaintiff's obesity, the ALJ noted that there is no longer a separate listing for obesity. (*See* Tr. 24.) However, the ALJ went on to consider Plaintiff's obesity in conjunction with the listings for major dysfunction of a joint and disorders of the spine. (*See id.*) The ALJ determined that Plaintiff's obesity did not appear to further impact her conditions so as to medically equal a listing because Plaintiff maintained normal strength and normal gait in her lower extremities. (*See id.*) These findings are supported by the record.

### C. Plaintiff's RFC: Physical Impairments

With regard to Plaintiff's RFC, the ALJ determined that Plaintiff could perform "a wide range of sedentary work as defined in 20 CFR 416.967(a)," and that "in addition to the exertional requirements, she can occasionally climb, stoop, crouch, and kneel, but can never crawl; and can only occasionally push and/or pull with both legs." (Tr. 24.) In reaching her conclusion, the ALJ considered and weighed the opinion of consultative examiner Dr. Thukral, the opinion of Plaintiff's orthopedic surgeon, Dr. Ronald Chase, and Plaintiff's own reporting and testimony regarding her symptoms.

In weighing opinion testimony, "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999) (citation omitted); *see also* 20 C.F.R. § 416.927(c)(2) (assigning "controlling weight" to treating sources' "well-supported" opinions reached by "medically acceptable clinical and laboratory diagnostic techniques" that are "not inconsistent" with other substantial evidence of impairments). If controlling weight is not assigned to a treating physician's opinion, the ALJ must provide "good reasons" for failing to credit that opinion. *See Snell*, 177 F.3d at 133 (citing 20 C.F.R. § 404.1527(d)(2)). Additionally, in assigning less weight to a treating physician, the ALJ must consider several factors, including,

11

*inter alia*: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the area covering the particular medical issues. *See Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527); *see also* 20 C.F.R. § 416.92(c)(2) (listing same factors).

Here, one of Plaintiff's treating physicians, Dr. Chase, opined that, based on Plaintiff's diagnosis of degenerative arthritis of the lumbar spine with disc disease and degenerative arthritis of the bilateral hips and knees, Plaintiff could do the following: occasional lifting or carrying up to ten pounds; standing or walking for two hours in an eight hour day, ten minutes at a time; sitting for two hours in an eight hour day, fifteen minutes at a time; no postural activities, including no climbing, bending, balancing, stooping, crouching, kneeling, or crawling; no pushing or pulling; occasional reaching (including overhead); constant feeling and handling; and no exposure to moving machinery or temperature extremes. (*See* Tr. 618-19.) The ALJ assigned "little weight" to Dr. Chase's opinion because "[t]hese limitations are out of proportion to the objective evidence of record"—"particularly the restrictions on upper extremity functioning bear no relation to any clinical examination findings or diagnostic imaging reports in this record." (Tr. 28.)

In deciding to afford "little weight" to Dr. Chase's opinion, the ALJ did not consider all of the factors required under 20 C.F.R. § 416.927. Indeed, the only factor the ALJ arguably considered was the consistency of Dr. Chase's opinion with the rest of the record. (*See* Tr. 28.) The ALJ did not consider Dr. Chase's specialization in orthopedics, the nature of the treatment relationship, or the frequency of examination. *Cf. Cabrera v. Comm'r of Soc. Sec.*, No. 16 Civ.

4311, 2017 WL 3686760, at *3 (S.D.N.Y. Aug. 25, 2017) (remanding case where ALJ failed to consider factors required under 20 C.F.R. § 404.1527, which are identical under § 416.927); *Giambrone v. Colvin*, No. 15-CV-05882, 2017 WL 1194650, at *16 (E.D.N.Y. Apr. 3, 2017) (remanding case where ALJ failed to address the required factors, failed to "comprehensively set forth [her] reasons for the weight assigned to [the] treating physician's opinion," and did not give good reasons for her decision to give the treating physician's assessment little weight).

Further, the explanation proffered by the ALJ for discounting Dr. Chase's opinion cannot be said to be a "good reason," as it is little more than a conclusion. To be consistent with the mandates of 20 C.F.R. § 416.927, the ALJ must articulate a "good reason," and, here, she did not. *Cf. Rugless v. Comm'r of Soc. Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013) (summary opinion) (remanding case where ALJ only provided conclusory explanation for finding treating physician's opinion inconsistent with the record); *Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (summary opinion) (remanding case and finding the ALJ "erred in failing to explain adequately his reasons for the minimal weight given" where the ALJ assigned little weight to treating physician's opinion because it was "not supported by the overall medical record"). The Second Circuit has "consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.,* 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted). Accordingly, remand is warranted here. On remand, the ALJ should revisit her decision not to accord controlling weight

13

to Dr. Chase as a treating physician. To the extent she decides not to accord controlling weight to his opinion, the ALJ must set out good reasons for not doing so.

## II. The ALJ's Determination as to Plaintiff's Mental Impairment Is Not Supported by the Record

The ALJ has the affirmative obligation to develop the administrative record. *Burgess*, 537 F.3d at 128 (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (observing that this obligation exists "[b]ecause a hearing on disability benefits is a non-adversarial proceeding"). This duty exists even when the claimant is represented by counsel. *Perez*, 77 F.3d at 47 (citation omitted). "The duty to develop the record is particularly important where an applicant alleges [s]he is suffering from a mental illness[], due to the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace." *Velez v. Colvin*, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017) (quoting *Hidalgo v. Colvin,* No. 12CV9009, 2014 WL 2884018, at *4 (S.D.N. Y, June 25, 2014)). Notably, whether the ALJ failed to develop the record adequately must be addressed as a threshold issue. *See Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) ("[I]n deciding whether the Secretary's conclusions on [a claimant's disabilities are] supported by substantial evidence . . . we must first satisfy ourselves that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act" (citations and internal quotation marks omitted)); *see also Downes v. Colvin*, No. 14-CV-7147, 2015 WL 4481088, at *9 (S.D.N.Y. July 22, 2015) (stating that whether the ALJ fully developed the record is a "threshold question").

Here, the ALJ determined that Plaintiff's dysthymic disorder did not constitute a severe impairment. Specifically, the ALJ found, "[Plaintiff's dysthymic disorder] does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and is,

14

therefore . . . deemed non-severe." (Tr. 23.)  Significantly, there is only one document in the record regarding Plaintiff's mental impairment:  a summary and medical source statement from Plaintiff's psychotherapist, Dr. Denis Blumberg.  (*See* Tr. 620-22.)  According to the summary, Plaintiff's diagnosis "represent[ed] significant anxiety and mood disorders of which [Plaintiff] [was] experiencing symptoms of extreme distress, poor appetite, insomnia, loss of self-esteem, irritability and mood swings which [were] causing significant clinical impairment in the areas of social emotion and physical functioning." (Tr. 620.)  The summary further states that Plaintiff had been attending psychotheraphy sessions once a week since October 2012.  (*See* Tr. 620.) Additionally, Dr. Blumberg's medical source statement provides that Plaintiff had "fair" functioning, (*see* Tr. 621-22), which the ALJ interpreted as meaning "moderate," in several potential work-related activities.  (*See* Tr. 29).

At the hearing, the ALJ acknowledged apparent deficiencies in the record regarding this impairment, but failed to fulfill her duty to develop the record.  Plaintiff's attorney stated at the hearing that Plaintiff was being treated by Dr. Blumberg for dysthymic disorder.  (*See* Tr. 62.) The ALJ correctly noted that the record contained only a medical source statement, accompanied by a brief treatment statement.  (*See* Tr. 64-68.).  Absent were any treatment records from Dr. Blumberg.  (*See* Tr. 64-68.)  Ultimately, the ALJ assigned "little weight" to Dr. Blumberg's opinion, stating that "Mr. Blumberg declined to submit his own progress notes, and when the undersigned offered during the hearing to subpoena these notes, the claimant's representative stated that this was not necessary." (Tr. 29.)  At the hearing, the ALJ requested that Plaintiff "submit treatment records so that [she] can have something that supports what [Dr. Blumberg] says" and further stated that Plaintiff "need[s] . . . something supporting a conclusionary [sic] record." (Tr. 65, 67.)  That Plaintiff's attorney requested, but did not receive, additional

15

documents from Dr. Blumberg does not obviate the ALJ's independent duty to develop the record. This is true even where, as here, Plaintiff's attorney can be said to have informed the ALJ that it was unnecessary to request the missing records. *See Corona v. Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *16 (E.D.N.Y. Mar. 24, 2017) ("The ALJ's discussion on the record with Plaintiff's counsel regarding [a doctor's] treatment notes and her decision to leave the record open for thirty days for the submission of his records were not sufficient to satisfy her duty because the ALJ took no further action to ensure that the record was complete, even though the ALJ was well aware that the record request had been outstanding since September 24, 2014, over two months before the hearing." (citations omitted)); *see generally Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" (quoting *Echevarria*, 685 F.2d at 755)).[7]

     The ALJ should have sought treatment notes from Dr. Blumberg before making an assessment as to the severity of Plaintiff's dysthymic disorder and whether it significantly affected her work-related abilities and RFC. *See Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (remanding case because the ALJ did not adequately fulfill his duty to develop the record and noting that the ALJ should have sought an evaluation and treatment notes before assessing the severity of the plaintiff's impairments). Her failure to do so warrants remand.

---

[7] Defendant argues that as a psychotherapist, Dr. Blumberg is not an "acceptable medical source." (Def. Mem. Supp. Mot. J. Pleadings 22, ECF 20.) However, psychologists and psychotherapists are considered "other sources" who can provide evidence of disability. *Baldwin v. Astrue,* 2009 WL 4931363, at *3, *5-6, 24 (S.D.N.Y. Dec. 21, 2009) (analyzing testimony of plaintiff's psychotherapist as a treating medical source); *Matejka v. Barnhart,* 386 F. Supp. 2d 198, 209 (W.D.N.Y. 2005) (remanding decision denying disability benefits where "there [was] no medical evidence to contradict the opinion of the treating psychotherapist").

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied, and the Commissioner's decision is remanded for further proceedings and additional findings consistent with this Order. The Clerk of Court is respectfully requested to mail a copy of this Memorandum and Order to pro se Plaintiff and close this case.

SO ORDERED:

/s/LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
September 30, 2017